Allen, J.
 

 The plaintiff in error herein will be referred to as the defendant, and the defendant in error as the plaintiff, throughout this opinion.
 

 This case arises out of a controversy over an injury sustained by the plaintiff upon a street car of the defendant company. The plaintiff fell upon the step leading down to the pit of the street car, in the proximity of the fare box, which in this case was situated in the middle of the car. The only doors in this type of car are immediately opposite the fare box; one door being the entrance door and the other the exit door. Plaintiff, who was accompanied by her husband, stated that just prior to the accident she had been standing, holding on to the pole back of the back seat in the forward part of the car; that it was her intention to leave the car; that she was opposite the front (or entrance) door of the car, which was moving; and that the conductor said, “Take the other door.” She said she then “left go” of the pole and went on, when the car gave a violent jerk. Plaintiff described the jerk of the car as being a “violent jerk, which threw me back;” “as the car jerked, I balanced backwards, balanced
 
 *598
 
 back — and fell backwards;” “a violent jerk, a very-very hard jerk, which threw" me right back;” and “as I started off in the meantime the car gave this sudden jerk, and I remember trying to make a grab for Mr. Merk to get hold of his coat or something, but I couldn’t reach him and I fell back in the meantime.”
 

 The plaintiff’s husband, who was standing at the fare box, preparing to leave the car, testified that the car all of a sudden threw him back, and stated that it was not a usual jerk. Other witnesses testified that there was nothing unusual about the jerk. However, the jury found in favor of the plaintiff.
 

 Claiming that mere characterization of the movement of the car is not sufficient to establish that it was such an unusual and unnecessary jerk as to constitute the basis of liability for injury arising therefrom, the defendant urges that the record presents no testimony to support the verdict. However, in view of the parts of the record above quoted, this court will not disturb the judgment upon that point. This was the exact ruling in the case of
 
 Wilkey
 
 v.
 
 Cleveland Ry. Co.,
 
 123 Ohio St., 679, 177 N. E., 637, and in
 
 Cleveland Ry. Co.
 
 v.
 
 Hunt,
 
 116 Ohio St., 291, 156 N. E., 133, in which it was held that testimony as to the result of a jerk upon the passengers is more than a mere adjective characterization and actually describes the movement of the car.
 

 We proceed, therefore, to consider the legal questions presented by the record.
 

 Defendant strongly urges that prejudicial error was committed by the trial court in the refusal to permit the cross-examination of the plaintiff with reference to an alimony action theretofore instituted
 
 *599
 
 by her against her husband, in which action she charged extreme cruelty upon the part of the husband. It is the claim of the defendant that it was entitled to cross-examine concerning the cruelty and personal injuries alleged in that action to have been inflicted by the husband upon the plaintiff, as bearing upon the questions of physical injury and damage in the instant case. If this connection had been shown, or even intimated, between the questions asked and the alimony suit, error might have intervened. However, when the defendant made the application to cross-examine upon this point, the relevancy of the request was not made clear. The plaintiff had testified that she had never been a witness in court before, and counsel for the defendant thereupon offered the following questions:
 

 “Q. You have been in court before, though, have you not?
 

 “Mr. Young: Objection.
 

 “The Court: Objection sustained.
 

 “Mr. Marshman: Exception.
 

 “Q. Weren’t you in court when the—
 

 ‘ ‘ The Court: Just a moment.
 

 “Q. —the suit, Elizabeth Merk—
 

 “The Court: Just a moment. We are not going into that.
 

 “Mr. Marshman: Sir?
 

 “The Court: We are not going into that.
 

 “Mr. Marshman: Exception. I think the remark was made here by Mr. Young a while ago that this lady had never been in court before.
 

 “Mr. Young: I said—
 

 “The Court: How is that?
 

 
 *600
 
 “Mr. Young: She testified she was not on the witness stand before.
 

 “The Witness: No.
 

 “Q. You did file suit against your husband for alimony—
 

 “Mr. Young: I object.
 

 “Q. —in 1928?
 

 “The Court: Just a moment, Mr. Marshman, we are not going into that.
 

 “Mr. Marshman: Your Honor, may I be heard on that?
 

 “The Court: No. Go ahead.
 

 “Mr. Marshman: I would like to take it up with your Honor in the absence of the jury.
 

 “Mr. Young: Want to except to asking a question like that in the presence of the jury. I claim it is misconduct.
 

 “The Court: Just a minute. Go ahead, Mr. Marshman, with something else.
 

 “Mr. Marshman: Can’t I, — I can make a record, can’t I?
 

 “The Court: Yes. Surely.
 

 “Mr. Marshman: Whispering to the reporter, out of the presence of the Court and jury and submitting to the ruling of the Court that the plaintiff cannot be further cross-examined about her former physical condition as is disclosed in the papers on file in the Comm on Pleas Court in the suit plaintiff brought against her husband, but excepting thereto: Let the record show that in January, 1928, Elizabeth Merk brought suit against Joseph Merk for alimony, in the Court of Common Pleas of Cuyahoga County, and this suit was Common Pleas number 293,428,
 
 *601
 
 copies of the petition, motion and brief being for reference attached hereto and marked Defendant’s Exhibits 3 and 4.”
 

 While we do not ignore the refusal of the court to hear counsel out of the presence of the jury, which might better have been done, this part of the record shows that counsel for the defendant up to that point had not indicated to the court that the purpose of this particular cross-examination was to inquire into the extent of the possible physical injury inflicted upon the plaintiff by her husband prior to the institution of this action, as bearing upon the question of physical injury in the instant case. The offer to prove by counsel for defendant, “Whispering to the reporter, out of the presence of the Court,” shows that the court was-not at that time aware of the fact that the defendant desired to cross-examine the plaintiff as to her former physical condition. Whatever error may have been committed, however, by the court’s refusal to hear counsel upon the question, was eliminated later when the court made the following statement:
 

 “The Court: Mr. Marshman, lest you might not handle this matter in the Court of Appeals, I would like the record to show that I offered to permit cross-examination of the plaintiff on that question of the alimony action.
 

 “Mr. Young: Prior to the time—
 

 “The Court: Prior to the plaintiff’s resting the case.”
 

 Regardless of whether these words of the court are to be construed as that he had previously offered the defendant the opportunity desired, or that he
 
 *602
 
 then offered the opportunity, if counsel for the defendant had at that time so desired, he could have cross-examined the plaintiff upon the question of physical injury arising out of the action pleaded in the alimony suit. He did not choose to avail himself of that opportunity, and thereby waived his contention.
 

 It is also claimed that the court committed reversible error in permitting the attending physician of the plaintiff to testify that the X-ray showed that there was a chip off the sacrum. No objection was interposed to the question which elicited this answer, and no objection was interposed to the answer. Defendant claims, however, that no such injury was alleged in the petition, and therefore that the court committed reversible error in not continuing the case upon the ground of surprise.
 

 The petition did allege that the plaintiff “sustained severe and permanent injuries to her back.” The Century Dictionary defines the sacrum as being “the compound bone resulting from the ankylosis of two or more vertebras between the lumbar and the coccygeal region of the spine, mostly those which unite with the ilia.” The same authority defines the back as being “the whole hinder part of the human body, opposite the front and between the sides, or the upper part of the body of most animals; technically, the spinal, dorsal, or tergal portion, surface, or aspect of the trunk, extending from the scruff of the neck between the shoulders to the buttocks, hams, or bifurcation of the body at the legs.” Giving the words of the petition their ordinary meaning, therefore, when it alleged severe and
 
 *603
 
 permanent injuries to plaintiff’s back, it did allege severe and permanent injuries to the sacrum, and this contention is also overruled.
 

 We come now to the most serious question raised by the defendant, and that is whether the trial court erred in admitting testimony given by the physician who attended, treated, and operated upon the plaintiff after the accident, as to his examination of certain X-ray photographs. The attending physician, without objection, had testified that the plaintiff’s back was, swollen and discolored in the lower part of the back, that there was local redness and tenderness, and that the entire area of the lower part of the spine was affected, and also that there was extreme tenderness at the tip of the spine in the so-called coccyx, and that the coccyx was freely movable, indicating that the coccyx was fractured. The doctor stated that he took the plaintiff to Mt. Sinai Hospital for an X-ray photograph; and later was asked:
 

 “Dr. Herz, in connection with your treatment of your patient, Mrs. Merk, will you tell us in connection with your diagnosis and treatment of her case, what the X-rays that were taken at your request showed?”
 

 The defendant objected to this question, and excepted to the overruling of the objection by the court.
 

 The witness answered that “The X-rays show a fracture of the coccyx.” The X-ray photographs were later offered in evidence, but rejected by the court.
 

 It is claimed by the defendant that the admission
 
 *604
 
 of the above answer constituted reversible error, upon the ground that the defendant had a right to cross-examine the person who took the X-ray photographs as to whether they were the X-ray photographs of the plaintiff, and as to whether they actually showed a fracture of the coccyx.
 

 If this testimony had been given by an expert, not the attending physician, its admission would have constituted reversible error. This testimony, however, was given by the physician who actually attended, treated and operated upon the plaintiff for the injury alleged to arise from this accident. He examined her, diagnosed the case clinically as fracture of the coccyx, and later removed the coccyx. While there is some conflict in the cases, it is the general rule that the attending physician is permitted to testify to matters which under other circumstances would be excluded as error. Thus it is stated in 3 Wigmore on Evidence (2d Ed.), Section 1722:'
 

 “ Statements of past facts in the shape of the circumstances of the injury are, as elsewhere, always rejected; but statements of
 
 past suffering
 
 and other symptoms in preceding stages of the illness are admitted
 
 when made to a physician.
 
 This peculiarity seems to have been the result of the suggestions in the obscure language of
 
 Bacon
 
 v.
 
 Charlton,
 
 [7 Cush. (Mass.), 581], and
 
 Barber
 
 v.
 
 Merriam,
 
 [11 Allen (Mass.), 322] (quoted ante, §§ 1718, 1719); the rule finally taking this shape in
 
 Roosa
 
 v.
 
 Loan Co.,
 
 [132 Mass., 439]. The modification (which seems to rest on the peculiar strength of the Circumstantial Guarantee in such cases) is rational and practical, and has been followed in a few other jurisdictions:
 

 
 *605
 
 “1882, Endicott, J., in
 
 Roosa
 
 v.
 
 Loan Co.,
 
 132 Mass., 439: ‘While a witness not an expert can testify only to such exclamations and complaints as indicate present existing pain and suffering, a physician may testify to a statement or narrative given by his patient in relation to his condition, symptoms, sensations, and feelings, both past and present. In both these cases [physician and ordinary witness] these declarations are admitted from necessity, because in this way only can the bodily condition of the party * * * be ascertained. But the necessity does not extend to declarations by the party as to the cause of the injury * * * which may be proved by other evidence.’ •
 

 “This modification extends only to past sufferings and symptoms, and does not include the past external events attending the. injury or illness.”
 

 Accord:
 
 Cleveland, C., C. & I. Rd. Co.
 
 v.
 
 Newell,
 
 104 Ind., 264, 3 N. E., 836, 5 Am. Rep., 312;
 
 State
 
 v.
 
 Blydenburg,
 
 135 Iowa, 264, 112 N. W., 634, 14 Ann. Cas., 443 (following
 
 Roosa
 
 v.
 
 Loan Co.,
 
 132 Mass., 439);
 
 Omberg
 
 v.
 
 U. S. Mut. Accident Assn.,
 
 101 Ky., 303, 40 S. W., 909, 72 Am. St. Rep., 413;
 
 Shade’s Admr.
 
 v.
 
 Covington-C. E. Rd. & Transfer & Bridge Co.,
 
 119 Ky., 592, 84 S. W., 733 (perhaps qualifying the
 
 Omberg
 
 case);
 
 Commonwealth
 
 v.
 
 Sinclair,
 
 195 Mass., 100, 80 N. E., 799, 11 Ann. Cas., 217;
 
 State
 
 v.
 
 Gedicke,
 
 43 N. J. Law, 86;
 
 Chicago, R. I. & P. Ry. Co.
 
 v.
 
 Jackson,
 
 63 Okla., 32, 162 P., 823;
 
 Hathaway’s Admr.
 
 v.
 
 Natl. Life Ins. Co.,
 
 48 Vt., 335;
 
 Acme Cement Plaster Co.
 
 v.
 
 Westman,
 
 20 Wyo., 143, 122 P., 89.
 

 Contra:
 
 Weber, Exr.,
 
 v.
 
 St. Paul City Ry. Co.,
 
 
 *606
 
 67 Minn., 155, 69 N. W., 716;
 
 Williams
 
 v.
 
 Great Northern Ry. Co.,
 
 68 Minn., 55, 70 N. W., 860, 37 L. R. A., 199.
 

 In an exhaustive note found in 67 A. L. R., 11, upon this subject, it is said:
 

 ‘ ‘ Statements by an injured or diseased person as to his condition and symptoms at the time, on his examination by a physician for the purpose of treatment, are admissible under a well-settled exception to the rule excluding hearsay.”
 

 Cases are cited from the federal courts and from some twenty-five courts of last resort in support of this rule. See, also, 11 Ruling Case Law, 610; 8 Ruling Case Law, 639, and notes.
 

 It is true that under these authorities the physician is not permitted to repeat narrative statements by the patient as to the cause of the accident; but statements of the patient as to the nature and the extent of the injury the physician is permitted to repeat, if he himself has acted upon those statements in his treatment.
 

 Where a physician, acting upon his own diagnosis, has required X-ray photographs to be taken, and acted upon those X-ray photographs in his treatment of the case, what possible distinction can be drawn between his stating what the X-rays show and his stating what a history of the case indicated?
 

 Under the circumstances of this record, we think that in any case there could have been no prejudicial error, inasmuch as the diagnosis of fracture of the coccyx was previously made and the coccyx was later removed by this same physician; and hence
 
 *607
 
 upon this question also we affirm the judgment of the Court of Appeals.
 

 Judgment affirmed.
 

 Marshall, C. J., Matthias and Robinson, JJ., concur.