Weygandt, C. J.
 

 Many errors are complained of by the defendant, but it is necessary to discuss only the one that is decisive of the entire controversy.
 

 At the conclusion of the plaintiff’s evidence the defendant moved the trial court for a directed verdict. This motion was overruled. Likewise, at the conclusion of all of the evidence a similar motion was made and overruled. Was this error?
 

 This is one of that class commonly designated as “jerk” cases. However, it should be observed that this is not the usual type in which the jerk is claimed to have occurred at the instant the car was set in motion. Neither is it the sort of case in which the jerk is alleged to have taken place as the plaintiff was in the act of stepping from the street to the car, or vice versa. According to the plaintiff’s testimony the jerk came after she had boarded the car, and after the car had been set in motion.
 

 It is true that according to the amended petition the three specifications of negligence are predicated upon the theory of a jerk occurring at the instant the car was started, and while the plaintiff was still standing upon the platform in the act of paying her fare. But her testimony is at variance with this in her statement that the jerk came after the car had been set in motion and after she had paid her fare.
 

 What was the nature of this jerk? This is answered by the following pertinent excerpts taken in sequence from the testimony of the plaintiff who was the only eye-witness offered in her behalf:
 

 “Q. Now, you say there were two steps going up on to the front of the car? A. Yes, sir.
 

 
 *586
 
 “Q. And you went up the steps and you got on the front end? A. Yes, sir.
 

 “Q. Then what did you do? A. Well, when I got on top of there the car commenced going.
 

 “Q. Well, did you do anything? A. I was opening my purse.
 

 “Q. Opening your purse; what for? A. To start to pay him.
 

 “Q. To pay your fare? A. To pay the fare.
 

 “Q. And then what happened, if anything? A. Well, I was starting to pay the fare. I turned after, you know, I put the money in, to turn to get my seat. There is a bar there. I hit this side of the bar.
 

 “Q. What happened to the car? A. It jerked a little like, looked like it wanted to stop or go, I didn’t know what it wanted to do in that minute. That’s when I fell. * * *
 

 “Q. Just how soon after you got on the platform where the motorman sat was it that the car started, how soon after you got on there? A. After I got inside?
 

 “Q. Yes. A. When I got inside the car was going. It was shaking when I got in there to put the money in there. I couldn’t get there. The car was going.
 

 “Q. Then you didn’t fall until some little time after the car got in motion? A. It got unbalanced somehow, jerked or something. I tried to get there. I fell and hit this side. * * *
 

 “Q. The car was moving all this time? A. Keep on going.
 

 “Q. Then you say there was a little jerk and you fell? A. When there was a jerk I felded. When I failed, he stopped.”
 

 Does this meet the requirements of the law? The plaintiff relies most strongly upon the cases of
 
 Cleveland Ry. Co.
 
 v.
 
 Hunt,
 
 116 Ohio State, 291, 156 N. E., 133, and
 
 Cleveland Ry. Co.
 
 v.
 
 Merk,
 
 124 Ohio State, 596, 180 N. E., 51. A study of the per curiam in the
 
 *587
 
 former, and of the syllabus and opinion in the latter discloses a recognition and application of the well settled rule that the mere occurrence of a jerk does not constitute evidence of negligence on the part of a common carrier of passengers in the operation of its cars, and that in order to prove such negligence there must be evidence indicating a jerk unusual in some respect such as in its suddenness, force, or violence. In both of the cited cases there was evidence to this effect. Not only were the jerks described as “violent,” “sudden” and “a very, very hard jerk,” but their physical manifestations also were depicted by statements such as “a sudden and violent jerk, which threw her against the other passengers around her and threw them against her”, “that the crowd tramped over her” and “a violent jerk, a very, very hard jerk, which threw me right back.”
 

 In the instant case the plaintiff’s description consists merely of the following characterizations: “It jerked a little”, “jerked or something”, “there was a jerk” and “when the car jerked I fell.” It is manifest that this falls far short of the above mentioned requirement as to proof of negligence. There is nothing here to indicate that the jerk was unusual in its suddenness, force or violence, or that it was in any manner different from those that ordinarily occur in the practical operation of a street car.
 

 Under these circumstances it was error for the trial court to overrule the defendant’s motions. It is therefore necessary to reverse the judgments of the lower courts and render final judgment for the defendant.
 

 Judgments reversed.
 

 Stephenson, Williams, Jones, Matthias, Day and Zimmeeman, JJ., concur.